**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL CASE NO.:** |
| | : | **24-CR-517-CKK-1** |
| **v.** | : | |
| | : | |
| **KEISHAWN JOHNSON,** | : | |
| | : | |
| **Defendant.** | : | |

<u>**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**</u>

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following memorandum to assist the Court in issuing an appropriate sentence in this case. Keishawn Johnson comes before this Court following a guilty plea to one count of Kidnapping while Armed, in violation of D.C. Code §§ 22-2001, 4502, and one count of Sexual Exploitation of a Child, in violation of 18 U.S.C. § 2251(a). For the reasons discussed herein, the government recommends that the Court sentence Mr. Johnson to 204 months of incarceration and five years of supervised release on the count of Kidnapping while Armed, and 180 months of incarceration and ten years of supervised release on the count of Sexual Exploitation of a Child, with both the periods of incarceration and supervised release running concurrently.

## I.      BACKGROUND[1]

On September 26, 2024, Mr. Johnson approached MV-2, a 15-year-old girl, as she was walking home from school in Washington, D.C. Mr. Johnson tricked MV-2 into getting into his car by telling her that MV-1, her 14-year-old friend, was inside. When MV-2 got into the vehicle, she saw that her friend was not there. Mr. Johnson began driving and told MV-2 that MV-1 had

---

[1] The following information is taken from Mr. Johnson's Statement of Offense.

stolen his gun. He repeatedly demanded that MV-2 tell him MV-1's location and told MV-2 that should could not leave until he found MV-1.

While driving with MV-2, Mr. Johnson pulled into a gas station to get gas for his car. MV-2's mother arrived and attempted to get MV-2 out of the car. However, Mr. Johnson had locked the door. While MV-2's mother was attempting to open the door, Mr. Johnson got back in the vehicle and drove away with MV-2. MV-2's mother then called MV-2. In response, Mr. Johnson took the phone and told MV-2's mother that MV-2 could not leave until he found MV-1. He then drove to another location and switched vehicles, directing MV-2 to get into the passenger seat of a black SUV. Mr. Johnson got into the driver's seat of the SUV and began driving again.

Mr. Johnson took MV-2's phone and texted MV-1, pretending to be MV-2, asking MV-1 where she was. MV-1 responded with her location. He then directed MV-2 to text MV-1 that she was in a black SUV with a friend and to not reveal that she was actually with him. On the way to MV-1's location, Mr. Johnson saw Antoine Jones, who was in a silver sedan. Mr. Johnson directed Mr. Jones to follow him.

Mr. Johnson located MV-1 in the 1300 block of Longfellow Street NW in Washington, D.C. at approximately 10:40pm. Mr. Johnson pulled over and MV-1 got in the back of the vehicle, not knowing that he was the driver. Once MV-1 was in the SUV, Mr. Johnson turned around and asked MV-1 where his gun was. When MV-1 responded that she did not know, Mr. Johnson got out of the vehicle, came around to the back of the vehicle where MV-1 was sitting, and pointed a gun at her face, demanding the location of the gun. Mr. Jones joined Mr. Johnson, also pointing a gun to MV-1's face. Mr. Johnson grabbed MV-1 by her arm and took her to Mr. Jones's car, which was parked behind the SUV. Mr. Johnson put MV-1 in the passenger seat of the vehicle, buckled her into the seat, and told Mr. Jones to take her cell phone, which he did.

At that point, the police arrived on scene. Mr. Johnson fled in the black SUV, with Mr. Jones following behind him with MV-1. MV-2 remained on the street. Mr. Johnson drove to his sister's house in the 700 block of 31st Street SE. Once they arrived at the house, Mr. Jones waited outside while Mr. Johnson brought MV-1 into the apartment and continued searching for his gun. Mr. Johnson refused to let MV-1 leave and told her that if he did not find his gun, he was going to throw her in the river. Mr. Johnson then directed MV-1 to get back in the black SUV and drove her to multiple locations, including in Maryland, looking for his gun. When MV-1 continued to say that she did not know where the gun was, Mr. Johnson hit her in the face, causing her nose to bleed. During the entirety of this period, Mr. Johnson was armed with a gun.

Mr. Johnson brought MV-1 back to his sister's home at approximately 6:00am on September 27. At approximately 1:00pm, Mr. Johnson told MV-1 to get back in the car. As he was getting in the car, the police arrived. Mr. Johnson fled with MV-1 in the passenger seat and crashed his car in the 4200 block of Southern Avenue SE. Mr. Johnson fled on foot and MV-1 was recovered by law enforcement.

Law enforcement recovered multiple phones from the abandoned vehicle, including a purple iPhone. The phone contained a video, taken by Mr. Johnson, showing him vaginally penetrating MV-1 with his penis. Mr. Johnson made this video on August 28, 2024, while at his sister's residence in Washington, D.C.

## II.    SENTENCING GUIDELINES

<u>Count Five: Kidnapping while Armed</u>

Kidnapping while Armed, in violation of D.C. Code §§ 22-2001, 4502, is a D.C. Code offense. As a result, the D.C. Voluntary Sentencing Guidelines apply. Kidnapping while Armed is a Group M3 offense. Mr. Johnson's Criminal History Score is D. Accordingly, his sentencing range under the D.C. Voluntary Sentencing Guidelines is 126—216 months of incarceration,

prison or long-split only, with a 5-year mandatory minimum sentence. Under D.C. Code § 24-403.01(b)(1)(A), there is mandatory term of five years of supervised release.

<u>Count Eight: Sexual Exploitation of a Child</u>

Mr. Johnson's final offense level under the U.S. Sentencing Guidelines is 33 and his Criminal History Category is III. As a result, his Guidelines Range is 180—210 months of incarceration, with a 15-year mandatory minimum sentence, and a term of supervised release of five years to life.

## III.    GOVERNMENT'S RECOMMENDATION

The Supreme Court has stated that a district court should begin all sentencing proceedings by correctly calculating the applicable guidelines range. *See United States v. Gall*, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."). After giving both parties an opportunity to argue for an appropriate sentence, the district court should then consider all of the applicable factors set forth in 18 U.S.C. § 3553(a). *Id.* These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the kinds of sentences available (18 U.S.C. § 3553(a)(3)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); the need to avoid unwarranted sentencing disparities (18 U.S.C. § 3553(a)(6)); and the need to provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7)).

Here, the government recommends that the Court sentence Mr. Johnson to 204 months of incarceration and five years of supervised release on the count of Kidnapping while Armed, and

4

180 months of incarceration and ten years of supervised release on the count of Sexual Exploitation of a Child. This sentence recognizes the seriousness of Mr. Johnson's offenses and the need to protect the community from further crimes, while taking into account his age and background. And, as discussed below, the government's recommendation reflects the sentencing factors set forth in 18 U.S.C. § 3553(a).

### A.    The Nature and Circumstances of the Offense

Mr. Johnson's offenses are extremely serious. He victimized two children, a 14-year-old girl and a 15-year-old girl, separately tricking each of them into entering his vehicle and then kidnapping them – one child at gunpoint. He created a terrifying situation for any person, much less two children. He enlisted his friend and co-defendant, Antoine Jones, to assist him terrorize MV-1, who was only fourteen years old. Mr. Johnson and Mr. Jones – two adult men – each held a gun to MV-1's face to prevent her from leaving, while repeatedly demanding that she tell them the location of Mr. Johnson's missing firearm. After bringing MV-1 to his sister's apartment, Mr. Johnson held her overnight, forcing her back into his vehicle and driving her around for hours, looking for his gun. During this time, MV-1 had no idea whether Mr. Johnson would kill her, as he had threatened to do, and no way to call for help, because he had taken her phone. At one point, Mr. Johnson assaulted her, hitting her in the nose. MV-1 recounted that her nose started to bleed so much that she swallowed the blood and then threw it up, feeling like she was going to pass out. *See* Exh. 1 (█████████████████████████).[2] Even then, Mr. Johnson refused to let MV-1 leave. He eventually brought her back to his sister's apartment, but then forced her *back* into his car again the following afternoon. When police arrived shortly thereafter, Mr. Johnson fled with MV-1 in the passenger seat of his car, again placing her at serious risk of harm, and eventually

---

[2] Law enforcement later found a shirt with blood on it in the vehicle.

crashed the vehicle. He managed to flee on foot while law enforcement recovered MV-1. There is no indication that Mr. Johnson planned to let MV-1 go, nor what he might have ultimately done to her, had police not arrived on scene.

Mr. Johnson's conduct towards MV-1 is even more egregious considering the harm that he had already done to her. He sexually abused a fourteen-year-old child who cannot consent to sex and filmed her while he did so, taking advantage of her vulnerability and lack of maturity for his own sexual gratification. This conduct, on its own, is reprehensible, but it also makes Mr. Johnson's subsequent kidnapping and assault of MV-1 even more harmful – not only did MV-1 undergo a terrifying, violent experience, but it was inflicted by someone she had cared for and trusted. As a result, the consequences of Mr. Johnson's actions on MV-1 will almost certainly be even more damaging and long-lasting.

Mr. Johnson's conduct towards MV-2, who was fifteen years old, should not be overlooked. He not only kidnapped MV-2, tricking her into his vehicle and then refusing to let her leave, but he forced MV-2 to lure her friend into the vehicle as well, essentially making a 15-year-old girl choose between getting hurt or putting her friend in danger. MV-2 then had to watch as Mr. Johnson and Mr. Jones pointed guns at MV-1 and abducted her, leaving MV-2 on the street with no idea what they would do to her friend. MV-2 subsequently apologized to MV-1, explaining that she had complied with Mr. Johnson's demands because she thought he was going to kill them. *See* Exh. 2 (text from MV-2 to MV-1); Exh. 3 (███████████████████████). Mr. Johnson's use of MV-2 in this manner is appalling.

In short, Mr. Johnson's conduct was egregious. He terrorized two children in order to locate an illegal firearm, compounding the harm that he had already done to MV-1 from sexually abusing and exploiting her. Both children will continue to face emotional and psychological effects from

the trauma he caused. Accordingly, the nature and circumstances of his offenses warrant a significant period of incarceration.

B.       The History and Characteristics of the Defendant

Mr. Johnson is currently 23 years old. However, he already has adult criminal convictions from two separate cases in Maryland for Theft ($25,000-$100,000), First Degree Burglary, and Unlawful Taking of a Motor Vehicle. In both cases, he benefitted from predominantly suspended sentences and was on probation at the time he kidnapped the minor victims in this case. Mr. Johnson had also been indicted on charges of Burglary, Grand Larceny, and Stealing a Motor Vehicle in a pending case in Fairfax, Virginia, at the time of the kidnapping. Both his Maryland cases and pending Virginia case involve stolen vehicles; clearly, these cases had no effect on his behavior given that both the SUV that Mr. Johnson used to abduct MV-1 and the car that he crashed the subsequent day when he fled from police were also stolen. Moreover, six days before Mr. Johnson kidnapped the minors in this case, he is alleged to have repeatedly punched his intimate partner in the face, resulting in a pending case in Maryland for Second Degree Assault.[3] Mr. Johnson's kidnapping of two minors in this case, using an illegal firearm and two stolen vehicles, while on probation in two cases and having two pending cases, shows that he does not believe the law applies to him and has no interest in rehabilitating his behavior.

Mr. Johnson's contempt for the law is underscored by his behavior during the present proceedings. He has continually portrayed himself as cognitively impaired in order to, in his own words, get "out of this shit." PSR ¶ 91. He malingered on tests, used another individual's phone

_____

[3] The Statement of Charges notes that the victim had injuries to her face consistent with being punched. In addition, the victim had previously filed a petition for a Civil Protection Order against Mr. Johnson in 2021, alleging that he had punched her, pulled out her hair, kicked her, and fired a gun at her as she ran away. The case was dismissed after the victim failed to appear for the hearing. *See* PSR ¶ 68.

7

account to surreptitiously instruct his mother to report that he had the cognitive abilities of a child, and pretended to have delusions. The BOP forensic psychologist further noted that Mr. Johnson did not demonstrate any problems with cognitive functioning in his custodial interview with law enforcement, nor is his portrayal during these proceedings consistent with either his ability to navigate and advocate for himself at Butner or to perform rap videos and upload them to Youtube, as he was doing prior to his arrest. *See* Forensic Evaluation (August 8, 2025) at 10, 14, 18. Mr. Johnson's attempt to evade prosecution by taking advantage of procedures meant to protect vulnerable individuals shows, once again, that he does not believe that the law or rules apply to him.

Mr. Johnson experienced both serious difficulties and significant trauma during his upbringing. His past has undoubtedly affected, and continues to affect, his development and mental health. However, he is now an adult, and his ongoing criminal behavior presents a significant danger to the community. Neither the lenient periods of incarceration afforded him in his prior criminal cases, nor the opportunities he has been given on supervision, have dissuaded him from victimizing others. To the contrary, his criminal conduct has escalated. The government's recommendation recognizes Mr. Johnson's difficult personal history and age by running his sentences concurrently. However, given his prior criminal history and repeated flouting of the law, a sentence above the mandatory minimum is warranted.

### C.    Punishment, Deterrence, Protection, and Correction

A sentencing court "shall impose a sentence sufficient, but not greater than necessary" to comply with the need for a sentence: "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The government's recommended sentence is necessary in the context of this case. Mr. Johnson inflicted serious harm on two children. His use of a firearm against a child is appalling, and his actions easily could have ended with one or both children dead or seriously injured. MV-1 will now have to deal with her own trauma from being kidnapped by two adult men at gunpoint and held against her will overnight, as well as the consequences of her sexual abuse and exploitation. A significant sentence is necessary both to provide punishment reflecting the gravity of his offenses and to demonstrate that such crimes against anyone, but especially children, will not be tolerated. 18 U.S.C. § 3553(a)(2)(A), (B). Moreover, as discussed above, Mr. Johnson has repeatedly spurned the opportunities for rehabilitation afforded to him and engaged in further criminal conduct when on supervision in the community. The government's sentence both protects the public from further crimes and recognizes the ineffectiveness of further attempts at corrective treatment in the community. 18 U.S.C. § 3553(a)(2)(C), (D).

D.      *Available Sentences and the Need to Avoid Unwarranted Disparities*

Section 3553(a)(6) directs courts to consider the need to avoid *unwarranted* disparities among defendants "with similar records who have been found guilty of similar conduct." However, it "does not require the district court to avoid sentencing disparities between defendants who might not be similarly situated." *United States v. Mattea*, 895 F.3d 762, 768 (D.C. Cir. 2018) (quoting *United States v. Guillermo Balleza*, 613 F.3d 432, 435 (5th Cir. 2010)).

Here, there is no Judicial Sentencing Information from the U.S. Sentencing Commission for Count Five, Kidnapping while Armed, because it is a District of Columbia Code offense. Moreover, the District of Columbia Criminal Justice Coordinating Council has not published

9

sentencing data specific to kidnapping offenses.[4] However, according to the D.C. Sentencing Commission's 2025 Annual Report, 93.5% of felony sentences in 2025 fell within the specified D.C. Sentencing Guidelines range. *See* 2025 Annual Report at 34.[5] The D.C. Sentencing Commission stated that this "high Compliance rate reflects the strong acceptance of the Guidelines by Superior Court judges, and that the Guidelines bring consistency to the felony sentencing process." *Id.* at 35.   Here, the sentence recommended by the government is within the range specified by the D.C. Sentencing Guidelines. Moreover, none of the mitigating departure factors outlined in the D.C. Sentencing Guidelines are present in this case.[6] There are, however, a number of factors that are not captured in the guidelines that justify a sentence at the high end: Mr. Johnson's offense involved two victims, both of whom were children, as well as the significant length of time that Mr. Johnson held MV-1 against her will, his physical assault of her, and the serious danger that he put her in by fleeing from police and then crashing his car with her inside. Thus, given the extremely high compliance rate with the Guidelines among D.C. Code felony sentences, the absence of any enumerated mitigating factors, and the egregious circumstances of Mr. Johnson's offense, the Court can conclude that the government's recommendation does not create an unwarranted sentencing disparity.

---

[4] *See* District of Columbia Criminal Justice Coordinating Council, Adult Sentencing Data, *available at* https://jsat.cjcc.dc.gov/public-safety-and-justice-dashboard/quarterly-reports/adult/sentencing_data/adult_sentencing_data

[5] *Available at* https://scdc.dc.gov/sites/default/files/dc/sites/scdc/page_content/attachments/2025%20ANNUAL%20REPORT%20-%20FINAL.pdf

[6] The mitigating departure factors are set forth in Chapter 8.4 of the D.C. Voluntary Sentencing Guidelines, *available at* https://scdc.dc.gov/sites/default/files/dc/sites/scdc/page_content/attachments/2025%20DC%20Voluntary%20Sentencing%20Guidelines%20Manual_0.pdf

With respect to Count Eight, Sexual Exploitation of a Child, during the last five fiscal years (FY2021-2025), the United States Sentencing Commission's Judicial Sentencing Information provides that the average sentence length was 172 months of incarceration and the median sentence length was 180 months of incarceration. The government's recommendation is consistent with these sentences.

IV.    **CONCLUSION**[7]

WHEREFORE, for all the reasons discussed above, the government recommends that the Court sentence Mr. Johnson to 204 months of incarceration and five years of supervised release on Count Five and 180 months of incarceration and ten years of supervised release on Count Eight, with both the periods of incarceration and supervised release running concurrently. This sentence contemplates not only the relevant guidelines range set forth for these offenses, but also adequately reflects the factors outlined in 18 U.S.C. § 3553(a).

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

    */s/ Caroline Burrell*_____
Caroline Burrell
CA Bar 283687
Assistant United States Attorney
601 D St. NW., Washington, D.C. 20530
(202) 815-8613
caroline.burrell@usdoj.gov

---

[7] The government has not received a victim impact statement or restitution request at this time.